IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:08 CR 65-1 |
| Plaintiff, | ORDER RE: UNRESOLVED OBJECTIONS TO PSR SUPPLEMENTING |
| -vs- | SENTENCING HEARING |
| Seth Bunke, | JUDGE JACK ZOUHARY |
| Defendant. | |

### **GOVERNMENT'S OBJECTION**

The Government objects to the failure to apply a two-level enhancement for obstruction, pursuant to Sentencing Guideline § 3C1.1, and argues the enhancement is applicable because Defendant Bunke committed perjury at trial. Specifically, the Government claims that some of Defendant's trial testimony directly contradicted testimony from other fact witnesses.

Application Note 4(b) allows for an increase for committing perjury. The enhancement has been applied for giving false testimony at trial. *See United States v. Gilbert*, 173 F.3d 974, 979 (6th Cir. 1999). The fact that Defendant's testimony is contradicted by other witnesses does not, by itself, require a finding that Defendant committed perjury. *United States v. Medina*, 992 F.2d 573, 591 (6th Cir. 1993) (error for district court to find perjury solely from general jury verdict of guilty). The Sixth Circuit recently, in *United States v. Boring*, 2009 WL 483238, ___ F.3d ___ (6th Cir. Feb. 27, 2009), reviewed the requirements for the addition of two points for obstruction: "the court 'must (1) identify those particular portions of defendant's testimony that it considers to be perjurious; and (2) either

make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury.'" *Id.* at *3 (*quoting United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002)). And the elements of perjury are "'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id.* (*quoting United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

The Court emphasizes that pursuant to *Lawrence* it must make specific factual findings to **apply** the enhancement, but there is no corresponding duty when a court elects **not to apply** the enhancement.[1]

This Circuit has relied on *United States v. Dunnigan*, 507 U.S. 87 (1992) to determine what constitutes perjury under the Sentencing Guidelines. Although a defendant's right to testify at trial "does not include a right to commit perjury, a defendant who is found guilty must not be penalized by an enhancement under § 3C1.1 simply for having testified on his or her own behalf." *Lawrence*, 308 F.3d at 632.

The Government argues that "defendant Bunke made numerous statements that specifically contradict the jury's verdict," but this is not the appropriate standard for applying the enhancement. Instead, the Court shall, pursuant to *Lawrence* and *Boring*, focus on the five statements identified by the Government as the basis for the claimed enhancement (Doc. No. 136, pp. 16-20).

   **1.    Bunke testified he spoke politely and professionally to Rodney Ray and Elmer Lee, whereas they testified Bunke used obscenities, was loud and threatening.**

---

[1] At the sentencing hearing, the Government strenuously argued the Court must make specific factual findings, crediting Defendant's testimony over other testimony, when it elects not to apply the enhancement. The Court believes it need not make such a finding and can rest on the Government's failure to meet its burden to establish an enhancement by a preponderance of the evidence. *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003).

The Government challenges Bunke's testimony as "obviously self-serving and false." Whether testimony is self-serving does not assist in determining whether it is perjurious. Indeed, Ray and Lee's testimony was also self-serving to their civil claims arising out of this incident. Nor was this discrepancy in the testimony a basis for the jury verdict. The jury found Bunke had no authority to make the stop -- whether he was polite or threatening. Furthermore, there is nothing in the testimony from the officers at the gas station where Bunke led Ray and Lee, or in the statement from Rodney Ray's wife who was telephoned by Rodney Ray on the ride to the gas station, that supports a claim of perjury. The Court concludes the Government has not shown perjury by a preponderance of the evidence.

**2.    Bunke's testimony that Jason Pope advanced on him and menaced him with his fist.**

The Government claims Bunke's testimony that Pope was "getting within, I guess, my personal space . . . within about three feet . . . with both fists and flinches at me like he's going to hit me" conflicts with the testimony of Corrections Officer Mysinger who testified that Pope was nowhere near Bunke and that Bunke charged into the cell and attacked Pope. The Government claims this disputed testimony "goes directly to the heart of the charge against Bunke because if the jury believed that Pope was in a position to threaten or harm Bunke, they [*sic*] would not have been able to find that Bunke's use of force on Pope was excessive." The Court disagrees; the jury finding on this charge did not turn on this disputed testimony. The jury could have found, even under Bunke's version, he exercised excessive force. Pope did not testify at trial, but what is clear is that Pope was taunting Bunke who overreacted to the situation. Again, with these variations in the testimony, the Court finds the Government has not proven perjury by a preponderance of the evidence.

3

### 3    Bunke's testimony that he did not attempt to climb over another officer's back to continue assaulting Pope after being separated from him.

The Government points out that Bunke's testimony on this point contradicted the testimony of Corrections Officer Algarin who testified that he separated Bunke from Pope to keep Bunke from further assaulting Pope. The Government argues that Algarin was "the credible witness on this point." Again, Pope did not testify, and the jury finding was not based on this disputed testimony. While Algarin may have believed separation was necessary to keep the two apart and end the jawboning, this does not necessarily mean Bunke was going to continue an assault. The Court finds that the Government has not proven perjury by a preponderance of the evidence.

### 4.    Bunke's testimony that he never kicked Jeff Jones.

Bunke testified that he kneed Jones in the side. The Government claims this was contradicted by several of Bunke's fellow officers, as well as medical evidence of Jones' injuries. The Government further claims this Court would need to find Bunke's fellow officers were lying in order to find that Bunke did not commit perjury. The Court disagrees.

The Court cannot say that these statements by Bunke satisfy each element of perjury. *See Lawrence*, 308 F.3d at 632. The Court rejects the Government's argument at the sentencing hearing that this Court **must** choose between whether Bunke lied when he denied kicking Jones in the head or side, or whether others lied when they claim they saw Bunke kick Jones. Some of Jones' injuries may have occurred before Defendant arrived, and the medical findings are consistent with such a conclusion. Kicks to the head or facial area would certainly have revealed some bruising within days, but the photos show none. Defendant correctly points out, and the Government does not discredit, that photographs of Jones shown at trial are not consistent with an individual who was subjected to repeated blows to the head with a steel-toed boot. Knees to the side, which Defendant conceded took

4

place, could have been seen as kicks by an observer. The Government simply did not meet its burden for this Court to conclude, by a preponderance of the evidence, that the enhancement applies.

Furthermore, some of the differences in testimony between Bunke and other witnesses was a matter of degree, and some depended on perspective. For example, the testimony of multiple officers regarding the incident with Jones resulted in multiple versions of exactly what happened. And the Court's jury instructions specially addressed how different persons might testify differently about the same incident.

The evidence clearly showed that inmate Jones initiated the melee and was fighting with several corrections officers requiring the need for other officers to assist to bring Jones under control. While the Government claims Bunke's testimony was "dramatically different from the testimony" of others at the scene, the Government focuses on only one difference: whether Bunke kicked or kneed Jones. And the Government does not dispute Defendant's claim that the jury verdict on this count could have been based on Defendant's own testimony that he kneed Jones in the side as opposed to kicking Jones in the head. Indeed the medical evidence supports a serious injury to the side, not the head.

Finally, with respect to the medical testimony, except for the question of whether Jones suffered fractured ribs (or how many), the testimony of Dr. Sterling is not disputed. However, what the Government failed to do at trial was to pose hypothetical questions to the doctor, as an expert, that would have connected Bunke's alleged conduct with the injuries. Thus, the jury was left with multiple inferences. Because Jones was handled by several corrections officers before Bunke arrived on the scene, certainly some of Jones' injuries could have resulted from his "take down" by other corrections officers. Jones was "slammed" to the floor before Bunke arrived.

In sum, the Court cannot conclude that this disputed testimony constituted perjury by a preponderance of the evidence. The Court disagrees that consistency with the jury's verdict requires imposition of the obstruction enhancement.

### 5. Bunke's testimony that the red substance on his boots was day-old spaghetti sauce.

The uncontradicted testimony is that following the Jones incident, a red substance was discovered on Bunke's boots. Bunke claimed this was brought to his attention by Officer McQueary and that Bunke believed the substance to be "spaghetti sauce from the previous night." No one knows if the red substance was blood. At best, the Government argues that the circumstantial evidence points to blood from Bunke's kicks to Jones. However, the blood could have come from the floor following Jones' take down, or from rubbing against Jones. The Government fails to point to the kind of evidence that would support a finding of perjury -- something more than conflicting testimony or credibility issues is necessary so that this Court does not impinge on a defendant's right, important constitutional right, to take his case to a jury. Here too, the Court finds the Government fails to prove Bunke committed trial perjury by a preponderance of the evidence.

While the Government continues to suggest a contrary finding would conflict with the jury's guilty verdict on three counts, the Government is wholly silent on the jury's verdict that Defendant was innocent on two other counts. The Court disagrees that an obstruction enhancement is mandatory. The Government's arguments in this case would require an enhancement in most cases where a defendant is found guilty. In *United States v. Burnette*, 981 F.2d 874, 879 (6th Cir. 1992), the court reversed an enhancement were the district court failed to "make a clear finding that the defendant has lied with respect to testimony given under oath." Here, the Court cannot make such

6

a finding supporting an enhancement, and the guilty verdict does not mean that Defendant has lied in maintaining his innocence.

In short, the Court does not find the necessary support for the application of this enhancement under the *Lawrence* standard. The Court cannot say that the jury verdicts against Defendant and those in his favor lead to a conclusion that he willfully obstructed justice. Therefore, the Court rejects the two-level increase in Paragraphs 54, 60, and 66 of the revised Presentence Report (PSR).

\* \* \*

### DEFENDANT'S OBJECTIONS

Objection No. 1 (¶ 18) - Under Offense Conduct, Defendant objects to the failure to indicate that five to seven correction officers attempted to restrain Jones. The Report has been revised to reflect that there were "other correction officers" in addition to Kotlarcyk and McConnell.

Objection Nos. 2-3 (¶¶ 18-19) - The testimony at trial differed on whether Defendant kicked Jones in the head or whether Defendant kneed Jones in the side. The Report is revised to reflect this disputed testimony. See discussion above.

Objection No. 4 (¶ 20) - Defendant objects to the claim that he cleaned blood off his boots. His boots were introduced into evidence without objection by the Government. There was no testing of the substance on his boots. However, there was testimony that others believed it was blood on his boots that he was wiping off. Therefore, the Report is revised to reflect this disputed evidence.

Objection No. 5 (¶ 21) - Defendant objects to the characterization of multiple fractured ribs sustained by Jones. Defendant correctly points out that there was no objective record (i.e., x-ray) of actual fractures, though Dr. Sterling did say there was a clinical finding of at least "sore or tender ribs, maybe fractured," which in turn may have caused the collapsed lung. The Report is so revised.

Objection No. 6 (¶ 24) - Defendant objects to the failure to include his testimony that he observed the driver of the vehicle driving erratically; that it is unclear whether the passenger in the vehicle could have seen Defendant reaching about his waist; that Defendant testified he produced his identification and badge but never reached into his waistband; and there was no testimony he was carrying a weapon at the time. Again, the Report is revised to reflect this disputed evidence.

Objection No. 7 (¶ 27) - Defendant objects to the failure to indicate that as part of his duties he is required to visit modules, sometimes alone. This was the testimony at trial, and the Report is revised to reflect such testimony. The Court notes, however, that this is not a defense to the assault of Jason Pope.

Objection No. 8 (¶ 29) - Defendant concedes he was spoken to by superior officers for his overzealous conduct, but denies he was ever approached regarding termination. Since the Report makes no reference to termination, this Objection is overruled.

Objection Nos. 9-10 (¶¶ 39, 40, 54, 60 & 66) - Defendant objects to these paragraphs dealing with adjustment for obstruction of justice. The Court previously ruled on this topic in response to the Government's Objection. These Objections are sustained for reasons noted above.

Objection No. 11 (¶ 48) - Defendant objects to the enhancement for use of a dangerous weapon based on the use of a steel-toed boot pursuant to § 2A2.2(b)(2). First, Defendant correctly points out this was not a finding made by the jury, and that the jury could have found the assault took place based on Defendant's own testimony that he kneed Jones. Such an enhancement has been found appropriate where a restrained inmate is kicked by a correction officer with his boots. *United States v. Serratta*, 425 F.3d 886, 909-10 (10th Cir. 2005). However, the Court cannot find by a preponderance of the evidence that this enhancement is applicable. As noted earlier, the guilty verdict

8

on this count is not synonymous with facial injury caused by the boots.  And the Government made no attempt with the medical testimony to connect Jones' injury to a kick in the head as opposed to a knee to the right side.   The medical records make no mention of kicks to the head but do directly mention injuries to his right side.  Defendant's Objection is sustained.

Objection No. 12 (¶ 49) - Defendant objects to the seven-level enhancement for inflicting a "permanent or life-threatening bodily injury" under § 2A2.2(3)(c). Defendant points out that he was one of several officers attempting to restrain Jones and that Jones was already on the ground struggling when Defendant entered the room.  This evidence is undisputed.  The Court believes the testimony at trial showed that force was exerted on Jones prior to Bunke entering the picture, but also showed that Bunke exerted excessive force in some fashion (kicks or knees).

The Court believes it more appropriate to apply the enhancement under § 2A2.2(3)(b) for "serious bodily injury" and therefore reduces this from a seven-level to a five-level enhancement. Application Note 1(J) to § 1B1.1 defines "permanent or life threatening bodily injury" as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent."  Here, the evidence at trial showed Jones clearly suffered a serious injury, but the evidence falls short of finding by a preponderance that Defendant caused a "substantial risk of death" or a permanent substantial impairment.  Of note, the enhancement for bodily injury is "premised on a particular result, not the defendant's conduct." *United States v. Perkins*, 89 F.3d 303, 308 (6th Cir. 1996).  Therefore, the Court must focus its inquiry on the injuries Jones actually sustained.

The Hospital Admission (Ex. 47) reflects a chief complaint by Jones of right side pain and shortness of breath.  The Admission notes describe symptoms as "moderate"; normal pulse, blood

9

pressure, and respiratory rate; Jones was "alert and oriented" but "appears in pain."  This is not the description of a person in a life-threatening situation.

The Hospital Discharge (Ex. 49) provides a final diagnosis of pneumothorax (punctured lung), contusions and abrasions, and a shoulder dislocation.  The ribs are mentioned during a consult where right rib fractures are noted "clinically," along with "no obvious rib fractures."  Again, Jones has no "LOC" (loss of consciousness), and there is no mention in these records of a life-threatening condition.

Furthermore, the Government never posed hypotheticals to Dr. Sterling that might have tilted the scales on this point.  As Defendant notes, Dr. Sterling testified **generally** that a punctured lung has the **potential** to be life-threatening, but he never was asked to connect Jones' condition to Bunke's conduct, or whether Jones' condition was life-threatening.  Jones had a "simple" pneumothorax, was stable, and suffered no long-term effects after his successful treatment.

Defendant further argues that any enhancement for inflicting injury is double-counting because the Probation Officer calculated Defendant's base offense level for Count One as aggravated assault under § 2A2.2.  However, accounting for the nature of the injury sustained is not double counting.  The Objection as to double counting is overruled and discussed further in Objection No. 20 below.

Objection No. 13 (¶¶ 51, 57 & 62) - These paragraphs add six levels for each offense pursuant to § 2H1.1(b) because the offense was "committed under the color of law."  Defendant argues this enhancement constitutes "double counting" because one element of each offense was that it be committed under the color of law. 18. U.S.C. § 242.  Impermissible double counting occurs when one part of the Guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the Guidelines. *United States v. Eversole*, 487 F.3d

10

1024, 1030 (6th Cir. 2007). Here, Defendant argues the § 2H1.1(b) enhancement is already accounted for in his baseline offense levels for his convictions.

In *United States v. Volpe*, 224 F.3d 72 (2d Cir. 2008), the defendant was also convicted under 18 U.S.C. § 242. The court there found the enhancement under § 2H1.1(b) did not amount to double counting, holding:

> [T]he additional punishment recognizes the particular harm inflicted when an individual entrusted to the care and supervision of an officer of the state is unlawfully abused by his supposed caretaker. If nothing else, abuse under these circumstances is more likely to be coercive because of the victim's legal inability to leave and the likely presence of other officers.

*Id.* at 76; *see also United States v. Webb*, 214 F.3d 962, 965 (8th Cir. 2000). As *Volpe* stated, both the in-custody and color-of-law adjustments are permitted in recognition of the separate harms caused by each of these aggravating factors. *Volpe*, 224 F.3d at 77. This Objection is overruled.

Objection No. 14 (¶ 54) - Resolved. Base level for Count Six is ten.

Objection No. 15 (former ¶ 55) - Resolved. No two-point "vulnerable victim" enhancement for Count Six.

Objection No. 16 (¶ 56) - Consistent with the Court's ruling above, the Court does not agree that a two-point enhancement should be given for alleged perjured testimony.

Objection No. 17 (¶ 110) - Resolved.

Objection Nos. 18-19 (¶¶ 152 & 154) - Defendant argues for a departure or variance. Defendant may make his arguments at the Sentencing Hearing. See later discussion of downward variance.

Objection No. 20 (¶47) - Defendant objects to the base level calculation for Count One, arguing it should be 10, not 14, under § 2H1.1[2] (Doc. No. 134, p. 5). Defendant argues the Probation Officer erred in using the offense level for aggravated assault under § 2A2.2 as the base level because the jury never made a finding of fact that an aggravated assault occurred. The jury in its Verdict found Defendant violated the civil rights of Jones "by use of excessive force" (Doc. No. 96). § 2A2.2 defines "aggravated assault" as a "felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury . . . (B) serious bodily injury . . . or (C) an intent to commit another felony." This section is contrasted with § 2H1.1(a)(3)(A) which identifies "the use or threat of force against a person."

Which section applies? Defendant correctly points out that he was not convicted of assault, but such a finding is not required for the Court to apply the enhancement. And the jury instructions referenced "assault" as the underlying offense for the incident with Jones.

This was an excessive force case based on an unwarranted assault of Jones, and Defendant does not seriously contest that Jones suffered a serious bodily injury. Considering all the circumstances surrounding the crime, the Court finds it appropriate to apply the base level of 14 under § 2H1.1. *See United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). While the situation was

---

[2] That section of the Sentencing Guidelines reads:

> §2H1.1. Offenses Involving Individual Rights
>   (a) Base Offense Level (Apply the Greatest):
>     (1) the offense level from the offense guideline applicable to any underlying offense;
>     (2) 12, if the offense involved two or more participants;
>     (3) 10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage; or
>     (4) 6, otherwise.

The Government argues for (a)(1) and the application of § 2A2.2.

initiated by Jones, not Bunke, Bunke's overreaction in an attempt to subdue Jones resulted in "serious bodily injury," qualifying for application of the aggravated assault offense level.

Objection No. 21 (¶ 52) - Defendant objects to Jones being described as a "vulnerable victim," resulting in a two-point enhancement pursuant to § 3A1.1(b)(1). The thrust of this argument is that Jones was resisting corrections officers' efforts to restrain him at the time of the assault, and therefore he cannot be considered a "vulnerable victim." And, perhaps more importantly, the Court has already added a six-point enhancement because Jones was a prisoner, and the assault took place under the color of state law. Defendant claims adding another two points would overstate Jones' status.

Commentary to this Guideline defines a vulnerable victim as one "who is **unusually** vulnerable due to age, physical or mental condition or is otherwise **particularly** susceptible to the criminal conduct." Application Note 2 (emphasis added). Neither of these phrases apply to Jones. As an illustration, the Commentary advises that "[t]he adjustment would apply for example, in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim." However, the Commentary limits § 3A1.1, noting an individual is not a "vulnerable victim" solely because of the fact they are in a position which makes them more susceptible to criminal activity. For example, "a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank." The Commentary further instructs not to apply the enhancement "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline."

However, in addition to this listing of factors as examples tending to show vulnerability, one court held "the totality of the circumstances, including the status of the victim and the nature of the crime, must be taken into account in determining the applicability of the vulnerable victim

13

enhancement." *United States v. Hershkowitz*, 968 F.2d 1503, 1506 (2d Cir. 1992). In *Hershkowitz*, the appellate court affirmed a vulnerable victim enhancement where a guard assaulted a detainee and where several other officers were also present at the time of the assault. The Court distinguishes *Hershkowitz* where the prisoner was assaulted twice -- each time without resistance or provocation -- but further disagrees with that court's analysis finding that a prisoner surrounded by law enforcement officers qualifies the victim as "unusually vulnerable" under § 3A1.1.

What makes Jones "unusually vulnerable" or "particularly susceptible"? How does he differ from Pope, for example, where the Government does not seek this enhancement? Are not all prisoners, like all bank tellers, generally vulnerable to civil rights abuse by virtue of their position? The Court finds the catch-all phrase --"otherwise particularly susceptible" -- is not limitless. And Jones does not meet the specific definition "unusually vulnerable" in the first phrase which is premised on age, physical, or mental condition.

Bunke did not seek out Jones to prey on some vulnerability equivalent to those illustrated in the Commentary. Jones was struggling with several officers and was not confined to a cell or handcuffed. Nor is it appropriate to base this enhancement on the egregious nature of a defendant's conduct or on the extent of the victim's suffering. *See* Note, *Brightening the Line: Properly Identifying a Vulnerable Victim for Purposes of Section 3A1.1 of the Federal Sentencing Guidelines*, 98 COLUM. L. REV. 1960, 1985-87 (1998). Rather, this enhancement applies to **unusually** vulnerable victims. *See United States v. Moree*, 987 F.2d 1329, 1335-36 (5th Cir. 1990) (enhancement not applied to victim's status as indicted felon where defendant did not exhibit "the extra measure of criminal depravity which § 3A1.1 intends to more severely punish"); *cf. United States v. Lambright*, 320 F.3d 517, 518 (5th Cir. 2003) (§ 3A1.1 applied to unprovoked assault of prisoner locked in a cell).

For all the above reasons, this Objection is sustained.

\* \* \*

### DOWNWARD VARIANCE

The resulting Guideline range (Criminal History Category I, Level 25) does not accurately reflect the crime in this case. It is too harsh for the nature of this crime.

Guideline § 5K2.10 recognizes: "If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense." The section further counsels the Court to consider, among other factors, the size and strength of the victim, the persistence of the victim's conduct, the victim's reputation for violence, and the danger presented by the victim. *See United States v. Harris*, 293 F.3d 863 (5th Cir. 2002) (upholding a downward departure where a police chief was convicted of civil rights violation because the victim had provoked the offense by kicking at the officer repeatedly after being handcuffed).

A minor downward variance (Level 23), with the added requirement of serious psychological counseling, coupled with the maximum three-year term of supervised release with continued mental health counseling, is an appropriate balance under Section 3553(a). The Court has weighed the need for protection and deterrence and finds these goals are met through this blended sentence. *See United States v. Grossman*, 513 F.3d 592, 596-97 (6th Cir. 2008).

Finally, the Court has also considered sentences in similar cases to justify a downward variance. *E.g., United States v. Strange*, 370 F. Supp. 2d 644 (N.D. Ohio 2005) (21-month sentence and two years supervised release for assault of inmate by a prison guard); *United States v. LaValle*, 439 F.3d 670, 706-08 (10th Cir. 2006) (holding district court did not abuse its discretion by imposing

30-month and 41-month sentences for defendant prison guards convicted of assaulting inmates after granting a two-level downward departure).

After properly calculating the range recommended by the Advisory Guidelines and considering the pertinent Section 3553(a) factors, the Court's sentence of 48 months in this case meets the parsimony provision of Section 3553(a) which requires the Court to make an independent determination of what sentence is sufficient, but not greater than necessary. The prison sentence is necessary for a just punishment, deterrence, and protecting the community, as explained at the sentencing hearing, and takes into account the nature of the offense, Defendant's character and background, as well as avoiding unwarranted disparities.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 11, 2009